**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenya Robinson, | No. CV-19-04464-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Kenya Robinson's claim for disability benefits by the Commissioner of Social Security (the "Commissioner"). For the following reasons, the Court will reverse the Administrative Law Judge's ("ALJ") decision and remand for further proceedings consistent with this opinion.

## BACKGROUND

On June 26, 2015, Robinson filed an application for disability and disability insurance benefits under the Social Security Act ("the Act") for a period of disability beginning June 4, 2014. (Administrative Record at 102 [hereinafter "R."].) Robinson's claim was initially denied on October 29, 2015, and upon reconsideration on March 9, 2016. (*Id.*) The ALJ held oral hearings on February 6, 2018 and June 23, 2018. (*Id.* at 120, 146.) On August 15, 2018, the ALJ issued a written decision denying Robinson's application, which became the final administrative decision when the Appeals Council denied Robinson's request for review. (*Id.* at 1.)

The ALJ concluded that Robinson had severe impairments in the form of cervical

degenerative disc disease, bilateral shoulder pain syndrome, depression, and anxiety disorder. (*Id*. at 104.) After considering medical evidence and Robinson's testimony, the ALJ determined that Robinson's residual functional capacity ("RFC") was, in relevant part, as follows:

> [Robinson] can occasionally lift/carry 21 to 50 pounds and frequently lift/carry 11 to 20 pounds; can sit, stand, and walk eight hours each in an eight-hour workday; can frequently push/pull; can frequently reach; can frequently climb stairs, ramps, ladders, and scaffolds; can frequently crawl; can tolerate frequent exposure to unprotected heights and moving mechanical parts; can tolerate loud noise (heavy traffic); and can sort, handle and use paper files.

(*Id.* at 106.) The ALJ found that this RFC permitted Robinson to perform her past relevant work as a convenience store clerk/cashier. (*Id*. at 110.) The ALJ also concluded in the alternative, after consultation with a vocational expert, that there were a significant number of other jobs in the national economy that Robinson could perform in light of her RFC. (*Id*. at 111.) Thus, the ALJ concluded that Robinson was not "disabled" as defined by the Act. (*Id.* at 111-12.)

**ANALYSIS**

I.    Legal Standard

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside an ALJ's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). However, "[l]ong-

standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

II.     Issues Raised By Robinson On Appeal

Robinson argues the ALJ made three errors requiring reversal: (1) the ALJ improperly relied on personal experience when weighing Robinson's symptom testimony; (2) the ALJ improperly rejected the medical opinion of Dr. Donald Fruchtman; and (3) the ALJ erred in discounting Robinson's symptom testimony. (Doc. 13 at 1.)

A. **Statements Made By The ALJ About Robinson's Cervical Collar**

During both hearings, the ALJ expressed skepticism about Robinson's continued use of a cervical collar (*i.e.,* neck brace) that had been prescribed to her in 2015. (R. at 143, 167-69.) The ALJ referred to his prior neck injury and "medical background" when stating that he didn't "think any doctor's going to have someone wear a cervical collar as often as [Robinson] claims that she's wearing" and questioned whether "the claimant's bringing it in for show." (*Id.* at 143.) However, Robinson's cervical collar—and the ALJ's apparent skepticism concerning its necessity—were not mentioned in the ALJ's written decision. Robinson now argues that (a) the ALJ's statements indicate the ALJ was biased against her and (b) the ALJ improperly discredited the medical evidence concerning the medical necessity of her cervical collar. (Doc. 13 at 17-18; Doc. 17 at 2-3).

These arguments lack merit. First, the ALJ's statements do not raise the inference that the ALJ was improperly biased or prejudged the outcome of Robinson's case. *Cf. Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("That the ALJ questioned some of [the claimant's] arguments . . . plainly does not show bias . . . ."). Second, there's nothing in the ALJ's decision that suggests the ALJ improperly relied on his "medical background." Although the ALJ may have, during the hearing, expressed doubt about the necessity of Robinson's cervical collar, it's not clear that he ultimately concluded the collar was unnecessary. In fact, the record contains indications to the contrary. The ALJ gave "great weight" to the February 2018 opinion of Dr. Robert Gordon. (R. at 108.) Dr. Gordon opined that Robinson's cervical collar was "medically necessary on a periodic basis." (*Id.* at 915.)

On this record, any error the ALJ may have committed by briefly referring to his own "medical background" when formulating questions was harmless.

B. **Dr. Fruchtman's Opinion**

Dr. Donald Fruchtman examined Robinson on October 5, 2015. (R. at 551.) He concluded that Robinson's maximum capacity to lift and carry (both occasionally and frequently) was 10 pounds; that she could climb, stoop, crouch, and finger frequently; that

she could reach and handle occasionally; and that she was restricted from working around heights and moving machinery. (*Id.* at 555-56.) The ALJ assigned "[l]ittle weight" to this opinion for three reasons: (1) it was "at odds with the subsequent State agency and consultative examiner's opinions"; (2) Dr. Fruchtman "had access to fewer medical records than the subsequent examiner"; and (3) "although both examiners performed tests related to fine manipulation, only the subsequent examiner additionally had the claimant perform activities demonstrating fine manipulation capacity such as picking up small coins and screwing a nut onto a bolt." (R. at 108.) Robinson now contends the ALJ's reasons for rejecting Dr. Fruchtman's opinion were legally insufficient. (Doc. 13 at 18-19.)

When evaluating a medical opinion, the ALJ considers: (1) whether the physician examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialization; and (6) "other factors." 20 C.F.R. § 416.927(c). Generally, opinions of treating physicians are entitled to the greatest weight; opinions of examining, non-treating physicians are entitled to lesser weight; and opinions of non-examining, non-treating physicians are entitled to the least weight. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If the ALJ discredits a controverted opinion of a treating or examining physician, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence. *Id.* An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Because Dr. Fruchtman was an examining physician whose opinion was contradicted by the opinions of other doctors, the ALJ was required to provide "specific and legitimate" reasons, supported by substantial evidence, before discrediting his opinion.

- 5 -

*Garrison*, 759 F.3d at 1012. The ALJ failed to do so. Although the ALJ's first rationale—that Dr. Fruchtman's opinion was at odds with other opinions—is, in general, a valid basis for rejecting an examining physician's opinion, *see* 20 C.F.R. § 416.927(c), the problem here is that the ALJ failed to explain *how* Dr. Fruchtman's opinion differed from that of subsequent examining doctors or *why* that difference was significant. *Cf. Larrison v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1150051, *2 (D. Ariz. 2020) ("It is not sufficient for an ALJ to identify a . . . physician's opinion, summarize the clinical evidence, and then offer the *ipse dixit* that the two are in conflict—reasoning and explanation are required.").

The second reason offered by the ALJ for discrediting Dr. Fruchtman's opinion fails for similar reasons. The ALJ gave "great weight" to the opinion of Dr. Robert Gordon, who examined Robinson in February 2018. (R. at 109, 913.) The ALJ discredited Dr. Fruchtman's opinion because he "had access to fewer medical records" than Dr. Gordon. (*Id.* at 109.) Although it's evident from the portions of the record cited by the ALJ that Dr. Gordon did, in fact, review more records than Dr. Fruchtman, the ALJ's explanation fails to indicate why Dr. Fruchtman's lack of access to certain records rendered his opinion less persuasive. For example, the ALJ didn't specify which records considered by Dr. Gordon, but not Dr. Fruchtman, rendered the former's opinion more persuasive than the latter's. The ALJ also didn't explain why consideration of the records to which Dr. Fruchtman lacked access could (or should) have changed his opinion. The cases cited by the Commissioner on this point are distinguishable because they involved circumstances where the ALJ discredited a physician's opinion because the ALJ perceived as "incomplete" the record to which that physician had access. (Doc. 16 at 9-10.) Given the absence of any reasoned explanation here, the Court is left to guess as to whether (or why) the ALJ viewed the records available to Dr. Fruchtman as incomplete.

The final reason offered by the ALJ—that Dr. Gordon performed specific tests pertaining to Robinson's fine motor abilities which Dr. Fruchtman did not perform—is also insufficient. To begin with, Dr. Gordon's and Dr. Fruchtman's difference of opinion is not limited to Robinson's fine motor skills. Robinson's ability to pick up small coins and screw

a nut onto a bolt doesn't have any apparent bearing on her ability to tolerate exposure to unprotected heights and moving machinery, an area in which Dr. Fruchtman's and Dr. Gordon's opinions diverged. (*Compare* R. at 556 [concluding Robinson could not work around heights or moving machinery] *with id*. at 922 [concluding Robinson could "frequently" work around unprotected heights and moving machinery].) Moreover, it's not obvious that Dr. Fruchtman's and Dr. Gordon's opinions concerning Robinson's fine motor skills were actually in conflict. Dr. Fruchtman opined that Robinson could frequently perform fingering activities. (*Id*. at 556.) Dr. Gordon opined that Robinson was able to pick up small coins and screw a nut onto a bolt "without difficulty." (*Id*. at 916.) The ALJ failed to explain why he viewed these opinions as inconsistent.

Because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Fruchtman's opinions about Robinson's limitations, the Court must next consider whether the error was harmless. An error is harmless if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The relevant inquiry is not whether the ALJ would have made a different decision absent the error, but whether the ALJ's decision is legally valid despite the error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, discounting Dr. Fruchtman's opinion was not inconsequential to the final disability determination. One area in which Dr. Fruchtman's and Dr. Gordon's opinions differed is the maximum amount Robinson can occasionally lift and carry. (*Compare* R. at 555 [Dr. Fruchtman: 10 pounds] *with id.* at 918 [Dr. Gordon: 21-50 pounds].) The ALJ's ultimate finding of non-disability was based in part on a determination that Robinson remained able to perform her past work as a "Cashier II." (R. at 110.) That job requires "[e]xerting up to 20 pounds of force occasionally." DOT 211.462-010, 1991 WL 671840. Similarly, Dr. Fruchtman's more restrictive opinion as to Robinson's limitations could have affected the ALJ's alternative finding that other work exists for her in significant numbers in the national economy, because acceptance of Dr. Fruchtman's opinion would

have led to a more restrictive RFC being presented to the vocational expert. Accordingly, this error was not harmless and reversal on this issue is required.

### C. Robinson's Symptom Testimony

The ALJ concluded that although Robinson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 107.) In support of this conclusion, the ALJ identified three categories of evidence that he viewed as inconsistent with Robinson's symptom-related testimony: (1) Robinson's descriptions of her daily activities; (2) Robinson's medical records; and (3) the fact Robinson previously told various medical providers that she quit her job in 2014 due to the psychological impact of repeated robbery attempts at her place of employment[1] (*i.e.,* not because physical limitations precluded her from performing the job). (*Id.* at 107-08.) Robinson now contends the ALJ's reasons for rejecting her symptom testimony were legally insufficient. (Doc. 13 at 20-21.)

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted). Absent affirmative evidence of malingering, the ALJ may only discount a claimant's statements and testimony for "specific, clear and convincing" reasons that are supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Thomas*, 278 F.3d at 959. General findings are insufficient.

---

[1] Specifically, the ALJ cited (1) the notes from Robinson's October 2015 visit to RONIC Psychological Services, which reflect that she "identified her last position of employment as being a cashier, a position which she held for seven years until she quit [in July 2014] because 'The place was being robbed too many times'" (R. at 561); (2) the notes from Robinson's September 2017 visit to Banner Health, which reflect that she "last worked in 2014" and "was working at Circle [K] but left the job because of robberies and has not worked since then" (*id.* at 1291); and (3) the notes from Robinson's August 2017 visit to Banner Health, which contain the following notation: "[S]tated she left her job at Circle K because of all of the robberies had has not worked since" (*id.* at 1636). In addition to suggesting that these notes were inconsistent with Robinson's claim that physical limitations prevented her from working, the ALJ also noted that "the claimant did not start taking psychiatric medication or receiving specialized mental health treatment until August 2017, more than three years after the alleged onset date" of the mental impairments. (*Id.* at 108.)

- 8 -

*Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

Here, as noted, the ALJ provided at least three different reasons for rejecting Robinson's symptom testimony. Although Robinson challenges the first two reasons (inconsistency with daily activities and inconsistency with medical records) in her brief, she doesn't mention—let alone challenge—the other reasons. Thus, even assuming *arguendo* that the ALJ's first two proffered reasons were unsupported by substantial evidence, Robinson's failure to challenge the ALJ's other proffered reasons precludes her from showing that the ALJ committed reversible error as to this issue.

III. <u>Remand Is Appropriate</u>

Robinson requests that the Court remand for a computation of benefits or, alternatively, for a new hearing. (Doc. 13 at 22-24.)

In general, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The alternative, a remand for benefits, is appropriate only in "rare circumstances." *Treichler*, 775 F.3d at 1099-1102. These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence or claimant testimony. *Id*. at 1100-01. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law

. . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted). Additionally, "even when those rare circumstances are present, [t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the Court's] discretion." *Id.* at 1101-02 (quotations omitted).

Here, only the first element is present. The ALJ failed to provide legally sufficient reasons for rejecting Dr. Fruchtman's opinion. Nevertheless, some conflicts remain unresolved (for example, the conflict between the opinions of Dr. Gordon and Dr. Fruchtman). Moreover, the Court has serious doubt about whether Robinson is disabled, even taking a more restrictive view of her RFC. Thus, this case will be remanded for further proceedings.

**IT IS THEREFORE ORDERED** reversing the decision of the ALJ and remanding for further administrative proceedings consistent with this Order. The Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 17th day of July, 2020.

Dominic W. Lanza
United States District Judge